Evans, J.
dissenting. In streams not navigable, such as Stephens’s creek, the riparian proprietor owns the land to the middle of the stream, or, as it is usually expressed, usque ad Jilum aqMoe. The banks and the bottom of the stream are as much his as the adjoining land. These belong exclusively to him, whilst to the water running along the stream, he has only a right to use it whilst it is on his land. All the other riparian proprietors have an equal right, so that although one proprietor may use the water for his own purposes, he has no right to use it to the prejudice of another. Judge Story, in the case of Tyler et al. vs. Wilkinson et al. says, “the right being common to all the proprietors on the river, no one has a right to diminish the quantity which will, according to the natural current, flow *451 to the proprietor below, or to throw it back upon the proprietor above.” This results, necessarily, from the perfect equality of right which exists to the use of a stream, provided by the bounty of nature for all those through whose land it flows ; and, therefore, whilst the law recognizes (as is apparent from all the cases) the right of a riparian owner to use the water as it flows over his land for any purposes for which he can make it valuable, it forbids the, use of it in any way or for any purpose which interferes with those who have an equal right to the enjoyment of it. But the proprietors, both above and. below, must submit to such changes in the stream, as necessarily result from the operation of the laws of naturé. If it be obstructed by a dam, the surface is enlarged, and, of course, evaporation increased; the natural flow of the water to the proprietor below, is more irregular, and, for a time, wholly suspended by the use of it for the purposes of machinery, whilst the current'is retarded on the proprietor above, in consequence of the obstruction below; such a limitation of the rule, aqua currit et debet currere ut currere solebat, seems to be necessary to the full enjoyment of the water by the riparian proprietor, as well as for the general benefit and convenience of society. But beyond this, I do not find any authority to go, nor do I think there is any decided case to warrant the conclusion that a proprietor below can throw back the water so as to cover the banks, or any portion of them, or even deepen the water in the channel, of the proprietor above, except only so far as this consequence necessarily results from retarding the current, by lessening the declivity of the inclined plane down which it flows. Judge Story, in the case before cited from Mason’s Reports, says, no one has a right to flow the water back upon a proprietor above. Chancellor Kent, 3 Com. 439, (5th edition) speaking of the proprietor’s right to use the water whilst it is on his own land, says, “without the consent of the adjoining proprietors, he cannot divert or diminish the quantity of water which would otherwise descend to the proprietors below, nor throw the water back upon the proprietors above, without a grant, or an uninterrupted enjoyment of it for twenty years, which *452 is evidence of it.” For this, he refers to a great number of cases, both English and American, and, among others, to our own case of Omelvany vs. Jaggers. In that case, at page 639, Chancellor Harper says, “ it may be observed, that water cannot be thrown back on the land of a proprietor above, without overflowing his soil. And though the water still remains within its natural channel, being only raised to a greater height upon the banks, yet still it is, in strictness, an invasion of the proprietor’s soil, over which, on general principles of law, he has the exclusive right of dominion. And in reference to this principle, I think the right of occupancy must be explained.” In Ang. on Water Courses, p. 63, it is said, “ like all incorporeal hereditaments, the privilege of flowing land can be created only by deed, devise or matter of record.” And at pages 62 and 63, “ it is obvious, that if the occupiers of mill seats are liable to a multiplicity of actions at common law, and their dams subject to be removed by their neighbors, for erecting works in places where they must necessarily overflow land which does not belong to them, by raising and continuing a sufficient head of water, they would very spon be discouraged. The Legislature, therefore, has wisely interposed, and granted authority to the proprietors of mills and mill privileges, to flow the adjacent lands,” providing for compensation, &c. This right, to overflow another’s land, is treated of in all the cases, and particularly in Taylor vs. Hampton, 4 McC. 96, as an easement, and all the authorities concur, that an easement can be created only by some of those modes known to the common law, such as grant, or devise, or prescription, which supposes always a grant to have existed. It seems to me, therefore, very clear, that if the riparian proprietor be the owner of the soil over which the water flows, and of the banks which bound the stream, any interfering with it, by deepening the water in the channel, or by raising it higher on the banks, whether they be perpendicular or sloping, so that he cannot have and possess it as nature made it, or as he and his predecessors have possessed and enjoyed it, is a cause of action. That this is the law, as understood in almost all the States, *453 is evident from the provision made by statutes, to authorize the raising of water on another’s land by mill owners. A summary of those statutes will be found in 3 Kent Com. 444, note c. Of the case quoted from 5 Ohio Reports, we know nothing, except that the dictum, is found in some of the digests, and, most likely, it depends on some statute of the State on the subject. Every man has absolute dominion over his own soil; no other has a right in common with him in it, as they have in the water ; he may, if he is so silly, indulge in a capricious refusal to permit its use for works of great convenience to the public. The banks and the bottom of the stream are as much his as the adjacent land, and to cover one with water, is as much the foundation of an action as the other. The only difference is, the damage would be greater in one case than in the other. The public has a right to an easement of way over a man’s land, but I do not find any authority, even in the ■decisions of those States where the rights and convenience of the manufacturer are more looked to than those of the landlord, that by the common law, a private easement may exist on another’s land, without any grant or prescription to support it, but merely on the ground of expediency. If the law is to be so, let it be so declared by the Legislature, as has been done in some of the northern States.
In the argument of this case, it was contended, that although the flowing back the water on the plaintiff’s land was a wrong, yet it is a wrong without a remedy ; it is called in the books damnum absque injuria. Without undertaking to define, with any accuracy, the meaning of these words, or their applicability to the case, it may well be asked, who is to decide, the owner, or the wrongdoer 1 If the latter, then you take away from the landlord one of the essential attributes of his dominion over his property. If you say the jury, these rights are to Append on the verdict of a jury, and not upon the settled law of the land. For any thing we do or can know, the jury on the other side of the court room might have given a different verdict. It is susceptible of demonstration, that by filling up the bed of the stream with still water, its capacity to dis *454 charge the water which would come down in times of freshets is diminished, and thereby the cultivated lands adjoining are more readily inundated in times of high water. This is certainly an injury, nor did it appear to me on the trial, that the plaintiff’s allegation that the unhealthiness of his settlement had been increased, was a mere phantom of his imagination; but that was a fact which the jury had the right to decide. It is the boast of the common law, that there is no wrong without a remedy, and the smallest trespass on a man’s land is actionable. The usual injury alleged in trespass, is the treading down the grass of the owner. No judge would nonsuit the plaintiff because he proved no other injury. Is the injury less actionable because it is effected by submerging his trees and grass in water, and by that means destroying them 1 The injury actually done in both cases is the same, and it would seem to me, an action would lie as well in the one case as the other. This is certainly true, unless there be something in the form of action. This is an action on the case, but I do not perceive that it differs materially from trespass, except that one is for an injury arising out of force, and the other for an injury unaccompanied by force. In both cases, the object of the action is to redress the wrong. The forms of action are only the modes of redressing wrongs. Every invasion oí the owner’s property is a wrong, for which the law gives a remedy, by that form of action which the law provides to redress the particular wrong committed. If trespass . will lie for treading down the owner’s grass and cutting down his trees, why should not case lie for the same amount of injury, in destroying his trees and his grass by inundating them by water % It might happen in both cases, that neither the grass nor the trees have any computable value in dollars and cents. In both cases, the act of the defendant is an invasion of the owner’s dominion, which, in itself, is a wrong, for which the action appropriate to the case will lie. In the case of Wright vs, Howard, the Vice Chancellor, after stating the rights of riparian proprietors in nearly the same language as is quoted above from Story and Kent, adds, “it appears to me that no action will lie for diverting or *455 throwing back water, except by a person who sustains an actual injury.” Now, if the Tice Chancellor was speaking in reference to those cases in which equity will interfere, to prevent a private wrong by injunction, he was probably right; or if he referred to the case of water privileges, unconnected with the soil, he was right; for, in that case, the right is only to use the water, and until this use is obstructed, no action will lie. But if he meant that no action will lie by the owner of the soil, for submerging it in water, without actual injury which a jury can estimate in money, so far as my researches have gone, there is no authority to sustain him. There may be some dicta which, apparently, countenance such a doctrine, but it will be found on examination, that they apply to cases of water privileges merely, which is only a usufructuary right, and very different from the absolute proprietary dominion of the owner of the soil. If this case were put on the ground, de minimis, and a new trial refused on that ground, I should probably assent, as we all did in the case of Sutton vs. Sheerer, decided in December, 1843. There the presiding judge charged the jury, as was done in this case, that the proprietor below had no right to flow back the water on the land of the proprietor above, but the jury found for the defendant. New trials are constantly refused in this court, in cases of petty trespasses or wrongs. In such cases the court will not interfere, and give the plaintiff another chance of recovering a few cents, for an accidental trespass or wrong, from which he sustained no injury. But the case is very different where the omission to bring an action by the owner, in process of time ripens into a right in the wrongdoer. If Garrett did not bring his action in twenty years, the defendant would have a perfect right to continue the water on his land. To these continuing wrongs, which will, unless arrested, ripen into a right, the maxim, de minimis, ought not to be applied. The object of the action is to establish a right, and the court cannot, consistently with duty, in such action suffer a jury to find for the defendant; they should be required to find something, if it be only a cent, in order to establish the right. It was on this principle that the case of Hobson vs. *456 Todd, 4 T. R. 71, for surcharging a common, and the case of Norvell vs. Thompson, 2 Hill, 470, for cutting down a few bushes to open a road, were decided. The actual injury, in both cases, was very slight, but the actions were sustained ; the wrong in the first case, and the trespass in the other, would, if not resisted, ripen into a right. The case of Daniels vs. Daniels, 7 Mass. R. 135, was not put on the ground of actual injury, but the Chief Justice said the plaintiff’s title was endangered by the destruction of the charters. The- question, whether the plaintiff has sustained any actual damage, and to what amount can only be known by the verdict of the jury. This is to submit to them, whether the plaintiff has a right of action; whereas, that is a question of law, and should be decided by the court. The province of the jury in such case is, to assess the damages. As before said, for petty trespasses the court will not grant, necessarily, a new trial, but that principle ought not to be applied, where the action is to establish a right which would be taken away by twenty years acquiescence ; which, according to all the authorities, will, per se, establish a title by prescription.